Agnes M. Goodwin, Administratrix, Appellant, v. Mason & Seabury et al., Appellees.

NEGLIGENCE: Condition of Premises—Buildings Abutting on
1   Street—Absolute Duty of Owner—Respondeat Superior. He who
    erects a building abutting on a public street owes an absolute duty

to the public to so erect it that it will be reasonably safe and strong. He cannot delegate this duty to anyone.

**NEGLIGENCE:** Condition of Premises—Buildings Abutting on
2 Street—Duty of Owner—Evidence of Care. It is wholly immaterial what degree of care may be exercised by an owner *in getting ready* to erect a building abutting upon a public street. *Such* care is wholly aside the mark. His ever-present and non-delegable duty is to see to it that the *actual construction* is such that the building will be reasonably safe and strong. Therefore, evidence of care in the selection of a competent architect or builder and his good-faith belief in their competency is inadmissible.

**NEGLIGENCE:** Trial—Instructions—Relieving Owner of Non-Dele-
3 gable Duty. Instructions reviewed, and *held* erroneous because relieving an owner, who erected a building abutting upon a public street, of his non-delegable duty to see that the actual construction of the building was such that it would be reasonably safe and strong.

**TRIAL:** Instructions—Applicability to Issues—Buildings Abutting
4 on Street—Knowledge of Defect. Defects *in the original construction* of a building abutting upon a public street are conclusively presumed to have been known to the owner. Therefore, in such case, no issue arises as to the owner's "knowledge" of such defects, and the submission to the jury of such issue is error.

*Appeal from Harrison District Court.*—THOMAS ARTHUR, Judge.

WEDNESDAY, JANUARY 19, 1916.

THE defendants' wall fell on Walter L. Goodwin as he was passing, and killed him. In this action, the administratrix of his estate claimed damages thereto, but the verdict was for defendants. From judgment thereon plaintiff appeals.—*Reversed.*

*Tinley, Mitchell* and *Pryor,* for appellant.

*C. W. Kellogg* and *John P. Organ,* for appellees.

LADD, J.—I. The defendants constructed a building in June and July, 1911, fronting west on Sixth Street in Mis-

souri Valley a distance of 50 feet and extending back 100 feet along the north side of Ontario Street.

1. NEGLIGENCE: condition of premises: buildings abutting street: absolute duty of owner: respondeat superior.

It was 29 feet high in front and 24 feet in the rear and made of hollow cement blocks 8 inches by 8 inches by 16 inches. The first story was used as a garage and the second story as an agricultural implement storage warehouse. At about 6 o'clock P. M. of August 12, 1912, a storm came up from the west, passing over the city, and during its progress, the south wall fell over into the street and on Walter L. Goodwin, who was traveling along the sidewalk, causing his death. The plaintiff is administratrix of his estate, and in the petition averred that the falling of the wall and the decedent's death were in consequence of the defendants' negligence in two respects in the construction of the building: (1) The plans adopted were insufficient, in that the walls therein provided for were not thick enough, considering the size of said building and the material used in the construction thereof, and the south wall was weakened by too many openings; and (2) the building was defectively constructed, in that the walls of same were insufficiently tied. A third ground of negligence charged was that defendants, during the storm, closed the south door of the building and left open the doors in the direction from which the windstorm was coming, and this, in connection with the alleged negligent construction, caused the wall to fall over the sidewalk. No complaint is made with respect to rulings on the last ground, save as involving the first two. The answer put in issue the allegations of negligence and averred that the wall fell because of an unprecedented storm, and, this being an act of God, they are not liable. The parties agree that the measure of defendants' duty in the construction of the building was that they exercise ordinary care and skill therein. *Connolly v. Des Moines Inv. Co.,* 130 Iowa 633; *Meggison v. Maine & Sons,* 160 Iowa 541; 1 Thomp. on Negligence, Sec.

1056, et seq. This cannot be met merely by exercising due care in the employment of another to do the work.

"The duty of exercising reasonable care for the safety of the public is an absolute duty which rests upon every owner of fixed property, and, if he delegates this duty to an agent or servant, he is answerable for the negligence of that agent or servant, under the rule of *respondeat superior*." *Connolly v. Des Moines Inv. Co.,* 130 Iowa 633; *Cork v. Blossom,* (Mass.) 26 L. R. A. 257.

In the latter case it is said that "Parties erecting upon their own land chimneys or walls or other structures, so situated that they may fall upon and injure the persons or property of others, are bound, at their peril, to use proper care in their erection and maintenance. By 'proper care' is meant such degree of care as will prevent injuries from any cause except those over which the party would have no control, such as *vis major,* acts of public enemies, wrongful acts of third persons, and the like, which human foresight could not reasonably be expected to anticipate and prevent. If, for instance, one chooses to build upon a quicksand a structure so near the line that if it falls it will fall upon and injure the adjoining premises, or to hang out a lamp over the highway, it is reasonable and just that he should be bound, at his peril, to use all known devices to make the foundation secure, or to keep the lamp from falling. The duty thus resting upon the defendants was one which they could not fulfill by the employment of a competent mason to examine the chimney, and by relying upon his opinion. As far as it went, it was an absolute duty; and nothing short of actual performance of it, or a fall of the chimney due to some one of the excepted causes, would excuse them. It is almost needless to add, that the fall of the chimney, unless caused by some one or more of the excepted causes, naturally would lead to the inference of an omission of duty in building or maintaining it."

The rule is quite clearly stated in *Wilkinson v. Detroit Steel & Spring Works,* 73 Mich. 405 (41 N. W. 490):

"The law imposed upon the defendant, when it exercised its lawful right of constructing a rolling-mill upon its premises adjoining a public highway, the duty towards the general public, having the right of passing along or lawfully being in that highway, to so erect it as to render it reasonably safe, and sufficiently strong, not only to resist the strain upon the supporting timbers of the roof, but strong enough to support the roof at all seasons, in all ordinary weather, and also under such extraordinary occurrences as were likely to arise in that locality, based upon past experience. And this duty cannot be avoided by employing an independent contractor to furnish the material and perform the work. . . . It cannot escape liability by saying: 'It was built according to plans which I procured, by a person whom I employed. I acted in good faith and with reasonable care, in selecting my architect and builder, and therefore I have discharged my whole duty in the matter.' The reason why this is not a sufficient answer is plain."

Thompson thus speaks of the duty in such cases in his Commentaries on the Law of Negligence, Sec. 1059:

"This duty of exercising care, being *absolute in its nature, cannot be devolved upon others,* but it is one of those absolute duties which rests upon every owner of fixed property. It is, therefore, quite immaterial by what grade of agent or servant the owner assumes to perform it; he will be answerable for the negligence of that agent or servant, under the rule of *respondeat superior.* He cannot, for example, shift the responsibility upon an *independent contractor,* but he is liable for the negligence of that contractor in failing to perform the duty."

Nothing less would be adequate for the protection of travelers constantly making use of the streets. The inquiry before the court was whether the wall had been constructed with that ordinary care and skill exacted by the law and this is what the trial court advised the jury in the seventh instruction. The trouble is that the court did not adhere thereto,

either in ruling on admissibility of testimony' or in giving other instructions.

II. One Hansen was superintendent of the construction of the building for defendants, and, with reference to his employment, Leroy Mason was allowed to testify over objection that he was recommended to see Hansen, and that he made inquiries concerning Hansen of men who had lived in Missouri Valley some years.

2. NEGLIGENCE: condition of premises: buildings abutting street: duty of owner: evidence of care.

"Q. I will ask you to state what the fact may be as to your belief concerning Mr. Hansen's ability to plan and erect such a building. (The objection as immaterial, irrelevant, incompetent, not the measure of care and caution and precaution required, and hearsay was overruled.)   A. I thought he was the best man I could hire."

D. H. Seabury, another of defendants, was questioned and answered as follows:

"Q. You may state what you did in reference to securing a proper building for this place of business.   A. You mean in regard to getting a man to do the work?   Q. Yes, sir.   A. Mr. Mason and I went together and made inquiries of business men in Missouri Valley who would be a competent man to do this work.   (Mr. Mitchell: I object to this as hearsay, incompetent, and move to strike the answer for that reason.   Overruled.   Plaintiff excepts.)   Q. Before you engaged the service of this man, did you make inquiry of several business men there?   (Objected to as immaterial, irrelevant and incompetent.   Overruled.   Plaintiff excepts.)   A. Yes, sir.   Q. State if you made inquiries with reference to the capability of the man to construct the building?   (Objected to as immaterial, hearsay, incompetent, and irrelevant.   Overruled.   Plaintiff excepts.)   A. We did.   Q. Were the men you consulted men on whom you relied for information of that character?   (Objected to as immaterial, irrelevant, and incompetent.   Overruled.   Plaintiff excepts.)   A. Yes, they were responsible men.   Mr. Mitchell: I move to strike the answer as not respon-

sive. The Court: It is not responsive. He asked if they were men on whom you relied; and you can answer that by 'yes' or 'no'. (Plaintiff excepts.) A. Yes, sir.''

The only possible tendency of such testimony was to show that defendants had exercised due care in the selection of a person to construct the building. And yet this would not constitute a defense and was not relevant to any issue in the case. Defendants' duty was absolute and, regardless of care they may have displayed in selecting a superintendent to construct the building or their confidence in his skill and ability, they were responsible for the exercise of ordinary care and skill in the actual work of its erection, and these matters afforded no defense whatever and only tended to mislead the jury. The evidence was extremely prejudicial and should have been excluded.

III. The jury was told in the thirteenth instruction that in considering whether defendants were negligent in the matter of the walls' not being of sufficient thickness they should consider what investigation the

3. NEGLIGENCE: trial: instructions: relieving owner of non-delegable duty.

defendant made regarding the materials used in its construction, the ability and reputation of the builder who was employed to make the plans for the erection of the building, what care they used in the selection of a builder, as to his skill and ability, and other matters. None of these matters relating to the builder were appropriate for consideration; for, regardless of all this, defendants were bound to see to it that their employees performed their work with ordinary care and skill, and they were in no wise excused by care in his selection. Such care had no tendency to show its exercise in the performance of the work or manner of construction. The instruction was erroneous, and like error is found in the fifteenth instruction.

IV. The defects complained of, if any there were, were in the original construction of the building and not such as

must have been detected subsequently in its necessary inspection. For this reason, no question of knowledge was involved. Defendants, having constructed the building, are presumed to have known the manner in which this was done, and, as they were required by the law to see to it that it should be constructed in an ordinarily careful and skillful manner, they were charged with knowledge of any omission so to do and liable for the natural consequences following therefrom. Nevertheless, the court instructed the jury that defendants were responsible for the alleged defects only if known to defendants, or such as should have been known in the exercise of ordinary care. The issue finds no place in the case and should have been omitted from the eleventh and fourteenth instructions. Some other matters are discussed, but these require no attention. Because of the errors mentioned, the judgment is—*Reversed.*

4. TRIAL: instructions: applicability to issues: buildings abutting on street: knowledge of defect.

EVANS, C. J., DEEMER and GAYNOR, JJ., concur.