[Civ. No. 26189. First Dist., Div. Four. Jan. 20, 1970.]

TONYA O'GAN, a Minor, etc., Plaintiff and Appellant, v.
KING CITY JOINT UNION HIGH SCHOOL DISTRICT,
Defendant and Respondent.

**COUNSEL**

Hutton, Foley & Anderson, Edward J. Foley and Peter D. Anderson for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and Richard K. Harray for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Plaintiff Tonya O'Gan appeals from a judgment entered after a jury found in favor of respondent King City Joint Union School District in a personal injury action. Appellant contends the trial court erred in excluding a prior inconsistent statement offered to impeach a defense witness and in refusing to instruct the jury on the liability of the school district for the negligent acts of an independent contractor.

Appellant, a student at King City High School, had received permission to leave study hall and visit the restroom in the Fine Arts Building. She was accompanied by a friend Linda Sprugasci. Appellant testified that Miss

Sprugasci was combing her hair and appellant was standing with her back to a sink and her hands on the side of it when the sink broke loose from its fastenings, and appellant fell to the floor. Her left hand and arm were cut by the broken pieces of porcelain from the sink, causing permanent injury.

A fact issue in the case was whether appellant was sitting on the sink (or leaning against it) and thus may have been contributorily negligent. Miss Sprugasci, the only witness to the accident, was absent at trial; from her deposition the following was read into evidence by the defense:

"Question: Could you say whether or not she was putting any weight or pressure on the basin? Answer: No, I couldn't.

"Question: Can you tell us whether or not her feet were on the floor or whether she was actually sitting on the basin? Answer: No.

". . . . . . . . . . . .

"Question: From what you saw, can you tell me what happened? Answer: She had her back to the sink and I don't know if she was leaning on it or not, but it just fell."

Plaintiff's counsel also questioned Miss Sprugasci:

"Question: Just a second, I have one question about Miss Sprugasci. Referring to the time when you said you saw Miss O'Gan with her hands— with her hand on the basin, did you see her feet on the floor at that time? Answer: No.

"Question: You don't know whether her feet were on the floor or not? Answer: No."

Appellant sought to impeach Miss Sprugasci's statement by introducing in evidence a letter she wrote to appellant on March 15, 1965, four days after the accident. In the letter she said: "Mr. Fisher called me into the office this morning during 1st period. So I told him exactly what I remembered. I figured that's what the office wanted when they called me. Ron-Ron says the pipes were all rotted. Anyway I made it clear we weren't messing around, which is the truth, and that you were NOT sitting on the sink."

The trial court excluded the letter, stating that even though it was offered for impeachment only, the jury would have considered Miss Sprugasci's statement as substantive evidence. Appellant contends that the letter should have been admitted for impeachment purposes under Evidence Code section 1202[1] which creates an exception to the general rule, expressed in

[1]Evidence Code, section 1202: "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as

section 770, that a witness may be impeached by an inconsistent statement only if he is provided with an opportunity to explain or deny it. (Law Revision Com., comment to § 1202.) ▉ However, it is settled that impeachment is improper when the witness has not given testimony harmful to the impeaching party. (*People* v. *Newson* (1951) 37 Cal.2d 34, 41-44 [230 P.2d 618].) It is true that this rule no longer applies in a civil case where the witness is present and testifies at trial, because Evidence Code section 1235 now provides that a prior inconsistent statement of a trial witness may be used as substantive evidence. (Law Revision Com., comment to § 1235.) ▉ But the section 1235 exception to the hearsay rule does not apply to prior inconsistent statements introduced under section 1202 to impeach a hearsay declaration. (Law Revision Com., comment to § 1202.) ▉ Therefore, since the deposition provided no basis for impeachment, and the letter could not be considered as substantive evidence, it was inadmissible.

▉ Even if the letter were admissible for impeachment, the judge had the authority to exclude it under Evidence Code section 352, which provides that a trial court may in its discretion exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In this case, the trial court could well conclude that the danger of the jury considering the Sprugasci letter as substantive evidence that plaintiff was not sitting on the sink outweighed any effectiveness it may have had in impeaching her deposition testimony. The deposition was neutral on the issue of contributory negligence, but the letter would have been strong evidence showing lack of contributory negligence while having no apparent competence except to impeach the witness' statement of nonrecollection. We conclude that it was not an abuse of discretion to exclude the letter.

▉ Under Government Code section 815.4, a public entity is liable for torts committed by an independent contractor to the same extent that a private person would be liable. The trial court refused appellant's request to instruct on this theory of liability. Appellant claims error. There was evidence that the Fine Arts Building was constructed by an independent

---

hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. For the purposes of this section, the deponent of a deposition taken in the action in which it is offered shall be deemed to be a hearsay declarant."

▉

contractor in 1931, and that the person who installed the sink was an employee of that contractor. A plumbing contractor, called as an expert witness by the plaintiff, testified that while there were five bolt-holes in the wall, only three were used in securing the sink; that there was no brace or studding into which the screws could be imbedded behind the holes; and that one of the three expanders used in fastening the sink did not expand because a nut was fastened backwards. The contractor concluded that the installation did not conform to the standards of the 1930s and that the sink would eventually come loose or collapse.

This evidence would have supported a jury finding that the sink had been negligently installed. Therefore, if the school district was liable for the contractor's acts, it was error not to so instruct the jury. ■ The general rule is that one is not liable for the acts of an independent contractor; however, this rule is subject to numerous exceptions. (See generally, Rest.2d Torts (1965) §§ 409-429.) One of these exceptions is that the possessor of land is answerable for the negligent failure of an independent contractor to construct or maintain buildings and structures in reasonably safe condition. (*Maloney* v. *Rath* (1968) 69 Cal.2d 442, 447 [65 Cal.Rptr. 386]; *Knell* v. *Morris* (1952) 39 Cal.2d 450 [247 P.2d 352]; *Brown* v. *George Pepperdine Foundation* (1943) 23 Cal.2d 256 [143 P.2d 929]; Rest.2d Torts (1965) § 422.) The rationale behind this and similar exceptions is explained in the Restatement: "[The exceptions] arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. The liability imposed is closely analogous to that of a master for the negligence of his servant.

"The statement commonly made in such cases is that the employer is under a duty which he is not free to delegate to the contractor. Such a 'nondelegable duty' requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted." (2 Rest.2d Torts (1965) p. 394.)

■ This liability of the landowner extends to negligent installation of fixtures which are permanently affixed to and an integral part of the building. (*Knell* v. *Morris, supra,* 39 Cal.2d 450, 456-457.) ■ The jury could have found that the sink was a fixture; therefore it was error not to give the requested instruction on the liability of the school district for negligent installation by the independent contractor.

Defendant argues that the error was not prejudicial because instructions given to the jury were sufficient to cover the school district's responsibility for negligent installation. The jury was instructed that the district was liable

for the dangerous condition of its property if (1) the dangerous condition was caused by the negligent act or omission of an employee, or (2) the district had actual or constructive notice of the dangerous condition. (Gov. Code, § 835.) A further instruction advised the jury that the district would be held to constructive notice only if plaintiff established that the condition had existed for such a period of time and was of such an obvious nature that the district should have discovered the condition and its dangerous character. (Gov. Code, § 835.2.) The evidence included school board minutes which showed that the district employed an architect to draw the plans and supervise the construction of the Fine Arts Building. Therefore, defendant argues, if there was negligent installation, the district's employee was negligent in his supervision, and furthermore, the district, through the architect, had constructive notice of any defect.

■ But the potential vicarious liability of the school district for the contractor's negligence is broader than its liability under Government Code section 835. The district might be vicariously liable without any fault of the kind contemplated by section 835. (2 Rest.2d Torts (1965) p. 394.)
■ It would have been possible for the jury to find that the architect, in supervising the construction of an entire building, was not negligent in failing to insure that this particular sink was properly installed. The defect in installation was not of such an obvious nature that the jury would have been compelled to find that the district had constructive notice of the dangerous condition of the sink.

The jury could well have concluded that appellant's injury was proximately caused by the contractor's negligence and that, under the instructions given, the school district was nevertheless not liable. Such a resolution of the issues would have been contrary to law. Failure of the trial court to instruct the jury on the strongest theory which might have supported liability was prejudicial error.

The judgment is reversed.

Devine, P. J., and Rattigan, J., concurred.