800 P.2d 962

**FT. LOWELL–NSS LIMITED PARTNERSHIP, Petitioner,**

v.

**The Honorable John F. KELLY, a Judge for the Superior Court of the State of Arizona, County of Pima, Respondent,**

**Josephine JULA and Michael Jula, wife and husband, Real Parties in Interest.**

No. CV 89–0349–PR.

Supreme Court of Arizona, En Banc.

Nov. 8, 1990.

Molloy, Jones & Donahue, P.C. by Ardner R. Cheshire, Jr., David J. Diamond, Tucson, for petitioner.

Rabinovitz & Associates, P.C. by Bernard I. Rabinovitz, Tucson, for real parties in interest.

## OPINION

FELDMAN, Vice Chief Justice.

This case deals with exceptions to the general rule that an employer of an independent contractor is not liable for the latter's negligence. The main issue presented is whether the court of appeals erred in interpreting and applying the Restatement (Second) of Torts § 422(b).

## FACTS AND PROCEDURAL HISTORY

Josephine Jula (Jula) was employed by National Self–Storage Development, Inc. (National), which operated at a storage facility owned by Ft. Lowell–NSS Limited Partnership (Ft. Lowell). Ft. Lowell engaged Hatfield and Associates as a general contractor. Glebe Electric (Glebe) was the electrical subcontractor which installed the conduit, electrical wiring, and fixtures according to the architectural plans.

Entry to the storage facility is obtained by entering a code on an electronic security system touch pad installed by Glebe. On April 3, 1985, Jula was demonstrating the security system to a new tenant when she received a severe shock. As a result, she suffers from transient dysphasia and right hemiparesis.

Jula sued National, Glebe, and other defendants. She later amended her complaint to add Ft. Lowell as a party. Ft. Lowell moved for summary judgment, arguing that its duty as a possessor of land was limited to operating the premises in a reasonably safe manner and warning of latent or concealed defects of which it had knowledge. Claiming it had no knowledge that the security system was defective, Ft. Lowell argued that it could not be liable for Jula's injuries.

The trial court denied the motion for summary judgment. Citing *Glowacki v. A.J. Bayless Mkts., Inc.*, 76 Ariz. 295, 263 P.2d 799 (1953), and Restatement (Second) of Agency § 277, the court found facts "from which it could be inferred that Ft. Lowell–NSS should have known of the hazardous condition ... [and] any information which Glebe Electric had, or any knowledge it should have had, would be imputed to Ft. Lowell–NSS." Minute Entry, Feb. 24, 1989. In denying Ft. Lowell's subsequent motion for reconsideration, the trial court relied on two exceptions to the general rule that an employer of an independent contractor is not vicariously liable for the torts of that contractor. The first exception was the nondelegable duty of a possessor of land to make his premises reasonably safe for business invitees. The second exception involved an employer's nondelegable duty where the work to be performed by an independent contractor is "inherently dangerous."

Ft. Lowell then sought special action relief in the court of appeals.[1] The court accepted jurisdiction and granted relief in part. Acknowledging the general rule that an employer of an independent contractor is not vicariously liable for the latter's negligence, the court considered the exception found in Restatement (Second) of Torts § 422 (hereafter Restatement) dealing with the liability of a possessor of land who employs an independent contractor. Adopting section 422(b) with some modification, the court held:

As we read § 422, for purposes of determining whether a landowner is liable, the

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus, or certiorari is now obtained by "special action." Rule 1, Arizona Rules of Procedure for Special Actions, 17B A.R.S.

contractor's conduct must be analyzed as if he were the landowner to determine whether that conduct fulfilled the landowner's duties to third persons. This would include, for example, the duty to exercise reasonable care to employ competent contractors and the duty to inspect the work of contractors. *See* Restatement (Second) of Torts §§ 411, 412 (1965). Construed in this manner, application of this section will not automatically result in landowner liability upon a finding that the contractor has been negligent. For purposes of determining the landowner's liability, the standard by which the contractor's conduct will be judged is that of the reasonable landowner under like circumstances, *see* Restatement (Second) of Torts § 283 (1965), and not the standard applicable to the contractor himself. Thus, conduct which may result in liability for the contractor because it violates the standard of care applicable to him may not result in liability to the landowner because it is consistent with the latter's duty of care. In other words, conduct which may amount to negligence on the part of the contractor may not equate to negligence on the part of the landowner.

*Ft. Lowell–NSS Ltd. Partnership v. Kelly*, 162 Ariz. 493, 497, 784 P.2d 699, 703 (Ct. App.1989). The court further stated:

> [T]he critical inquiry is whether [the contractor], standing in the [landowner's] shoes, knew or should have known of the defective work, whether [the contractor] made such inspections as would have been reasonable for [the landowner] to have made had it retained the work in its own hands, and whether such reasonable inspections would have revealed the existence of the defective work.

*Id.* at 498, 784 P.2d at 704. Because no evidence was presented on these points, the court denied relief, affirming the trial court's denial of summary judgment on this issue.

In considering the second issue raised by Ft. Lowell, the court of appeals ruled that there were no facts from which the trial court could conclude that electrical work is inherently dangerous, and therefore the tri-al court had exceeded its authority in denying summary judgment on this issue. In effect, the court affirmed denial of summary judgment on one count and directed partial summary judgment in favor of Ft. Lowell on another.

Jula next filed a petition for review in this court, presenting two issues for our consideration:

1. Whether the court of appeals erred by severely limiting the effect of section 422(b), in an apparent conflict with division one's opinion in *Koepke v. Carter Hawley Hale Stores, Inc.*, 140 Ariz. 420, 682 P.2d 425 (Ct.App.1984);

2. Whether the court erred in holding that work involving electrical wiring was not inherently dangerous.

We accepted review to resolve the apparent conflict between the two divisions of the court of appeals and to examine the question of a land possessor's liability for the negligence of his independent contractor. Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## JURISDICTION

■ As we recently stated in *Alhambra School District v. Superior Court*, 165 Ariz. 38, 796 P.2d 470 (1990), it is the general policy of Arizona appellate courts to decline jurisdiction when special action relief is sought from a denial of summary judgment. *Id.* at 40 n. 3, 796 P.2d at 472 n. 3. It is generally even more unwise to take special action jurisdiction simply to affirm the trial court's denial of summary judgment, as was done in this case.

As we have mentioned many times in the past, we do not favor special action proceedings asking the appellate system to review trial court denials of motions for summary judgment. *Id.* If our appellate courts were to welcome such requests, the system would be inundated by petitions from disappointed movants. Instead of a method for expeditious resolution of meritless claims, summary judgment would be

transformed into a fertile field of appellate practice, further complicating our system of civil adjudication.

This case illustrates the needless burdens imposed by liberal grant of jurisdiction. Ft. Lowell requested special action relief from the court of appeals after the trial court denied its motion for summary judgment. That court accepted jurisdiction, reversing the denial of summary judgment on one count, and remanding for further proceedings, which of course would include trial. Jula then petitioned for review by this court as to the grant of partial summary judgment in favor of Ft. Lowell. Because we disagreed with the opinion of the court of appeals, we were compelled to accept jurisdiction, vacate the opinion of the court of appeals, and, finally, affirm the trial judge's denial of summary judgment. Both the court of appeals' opinion and ours accomplish the same end as the trial judge's denial of summary judgment— an order that the case be tried. However, it has taken almost two years, two appellate proceedings, and two opinions for the case to return to the trial judge's hands and be scheduled for trial.

We again caution that, except in very unusual cases, denial of summary judgment is not an appropriate matter for the exercise of special action jurisdiction. *See, e.g., King v. Superior Court,* 138 Ariz. 147, 149–50 and n. 3, 673 P.2d 787, 789–90 and n. 3 (1983). This is especially so when the denial is to be affirmed.

## DISCUSSION

### A. The Independent Contractor Rule: Historical Origin and Modern Application

Historically, although the first independent contractor cases assumed the doctrine of respondeat superior applied, subsequent cases modified this rule of liability to ex-

empt an employer from liability for his independent contractor's negligence.[2]

The independent contractor rule, as this general principle of nonliability became known, was premised both on a notion of fairness and on a *policy theory of risk allocation.* In an effort to undercut the rigors of the respondeat superior doctrine, the cases implicitly concluded that it would be unjust to hold an employer liable for the negligence of an independent contractor over whom he had no control. Additionally, courts noted that the employer's lack of control over the manner in which the independent contractor conducted the work rendered the undertaking essentially the contractor's enterprise rather than the employer's. Therefore, from a policy standpoint, the contractor was the proper party to be charged with the responsibility of preventing the risk, administering it, and distributing it. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 71, at 509 (5th ed. 1984) (hereafter PROSSER & KEETON); *see also* C. Morris, *The Torts of an Independent Contractor,* 29 ILL.L.REV. 339, 342 (1934).

Around 1850, courts began to recognize several exceptions to the general rule of nonliability, apparently recognizing that it conflicted with settled tort principles, particularly that regarding a landowner's liability for injuries to invitees arising from conditions on his land. The "nondelegable duty" exception became one of the most far-reaching qualifications on the independent contractor rule. As early as 1881, Lord Blackburn articulated the nondelegable duty exception in the leading English case of *Dalton v. Angus:*

> A person causing something to be done, the doing of which casts upon him a duty, cannot escape from the responsibility attaching to him of seeing that duty performed, by delegating it to a contractor. He may bargain with the contractor that he shall perform the duty, and stipu-

---

2. *Bush v. Steinman,* 1 Bos. & P. 404 (C.P.1799), held an owner should not be allowed to discharge himself from liability for negligence of his independent contractor that causes injury to another. Note, *Risk Administration in the Marketplace: A Reappraisal of the Independent Con-*

*tractor Rule,* 40 U.CHI.L.REV. 661, 662–63 (1973). *Bush* was first limited to the landowner situation and eventually overruled altogether. *Id.* at 663, n. 11 (citing *Reedie v. London and N.W. Ry.,* 4 Ex. 244 (1849)).

late for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it.

L.R. 6 App.Cas. 740, 829, 10 Eng.Rule.Cas. 98, 155 (1881), *cited in* Annotation, *Liability of Employer as Predicated on the Ground of His Being Subject to a Nondelegable Duty in Regard to the Injured Person*, 23 A.L.R. 984, 985 (1923).

 The present general rule for independent contractor cases is still that the employer is not liable unless he has been independently negligent, as by improper selection of the contractor or in some other manner. *See* Restatement §§ 410–415; *E.L. Jones Constr. Co. v. Noland*, 105 Ariz. 446, 454, 466 P.2d 740, 748 (1970). However, many exceptions to the rule of nonliability have now been recognized so that even where the employer has not been personally negligent, he may be vicariously liable for the contractor's negligence. *See generally* Restatement §§ 416–425. The recognized exceptions have become so numerous that some commentators have questioned the validity of the rule itself. PROSSER & KEETON § 71, at 510 n. 10 and accompanying text.

## B. The Nondelegable Duty Exception

 Although the obligation required by the law of torts is normally described as the duty to use reasonable care, there are special situations in which the law prescribes a duty requiring a higher degree of care. This higher standard often stems from a special relationship between persons. For example, persons who engage in relationships that are "protective by nature" (*e.g.*, the common carrier, innkeeper, employer) are often held to possess an affirmative duty to guard the safety of their respective charges. PROSSER & KEE-

TON § 56, at 383. Similarly, the owner or possessor of land is held to an affirmative duty to protect those described as his invitees by making and keeping the premises safe. PROSSER & KEETON § 61, at 419, 425–26. It is in these special relationships that the independent contractor rule has its narrowest application.

 The nondelegable duty exception is somewhat of a misnomer because it refers to duties for which the employer must retain responsibility, despite proper delegation to another. *See* Note, *Risk Administration in the Marketplace: A Reappraisal of the Independent Contractor Rule*, 40 U.CHI.L.REV. 661, 666 (1973). Such situations exist where the employer is under a higher duty to some class of persons. This duty may be imposed by statute, by contract, by franchise or charter, or by the common law. PROSSER & KEETON § 71, at 511. If the employer delegates performance of a special duty to an independent contractor and the latter is negligent, the employer will remain liable for any resulting injury to the protected class of persons, as if the negligence had been his own. The exception is premised on the principle that certain duties of an employer are of such importance that he may not escape liability merely by delegating performance to another. 5 F. HARPER, F. JAMES, AND O. GRAY, THE LAW OF TORTS § 26.11, at 83–88 (2d ed. 1986) (hereafter HARPER & JAMES); Note, *supra*, 40 U.CHI.L.REV. at 666.[3]

 In the instant case, we are concerned with the common law duty of a possessor of land to keep his premises reasonably safe for invitees.[4] Restatement § 422 gives the most complete exposition of the nature of the liability, making a possessor of land liable to invitees for the negligence of an independent contractor

---

**3.** The concept of nondelegable duty is generally equated with vicarious liability, either explicitly or implicitly. *See* Restatement, introductory note to §§ 416–429 at 394; PROSSER & KEETON, at 511 (equating nondelegable duty with vicarious liability); Annotation, *Storekeeper's Liability for Personal Injury to Customer Caused by Independent Contractor's Negligence in Performing Alterations or Repair Work*, 96 A.L.R.3d 1213, 1217 n. 13 (1979) (noting that even where courts do not specifically equate a non-delegable duty with vicarious liability, the results under either concept are the same).

**4.** For purposes of summary judgment, it was assumed that Jula was an invitee. Transcript of Summary Judgment Hearing, Feb. 14, 1989, at 4.

hired to do construction or repair work on the premises.[5]

■ Restatement § 422(a) imposes liability for injuries occurring when the landowner has retained possession of the premises under construction. Subsection (b) imposes liability for injuries that occur after the work has been completed and the landowner has resumed possession. The employer is held liable for injuries under the above circumstances because he is in control of the premises. He may not be held liable where the injury occurs during a time when the independent contractor has exclusive control of the premises under construction. *See* Restatement § 422 comment c; *see also* PROSSER & KEETON, at 512.

■ Sections 422(a) and (b) are logically consistent with the general body of law regarding the duties of a landowner to his invitees. The landowner's general duty is one of "due care under all circumstances" to make the premises reasonably safe. HARPER & JAMES § 27.12, at 234. The fact that the landowner made an inspection of the premises will not exempt him from liability to an invitee for an injury caused by faulty construction or other negligence creating a dangerous condition. *Id.* at 234–35 (citing *Rose v. Melody Lane of Wilshire,* 39 Cal.2d 481, 247 P.2d 335 (1952)).

Restatement § 422 was first explicitly adopted in Arizona in *Koepke,* 140 Ariz. at 423, 682 P.2d at 428.[6] In *Koepke,* the court of appeals recognized that the choice to place liability on the landowner under section 422 is essentially built on a long-standing policy primarily concerned with risk

allocation. Specifically, the court delineated the following: the possessor of the land receives the benefit of the independent contractor's work; the possessor is able to insure against the risk of injuries due to the independent contractor's work and incorporate the expense of such insurance as a cost of doing business; and the possessor is in a position to prevent or minimize the risk of injury by selecting a competent contractor, initiating safety procedures, and requiring dangerous conditions to be remedied. *Id.* at 424, 682 P.2d at 429. Although *Koepke* speaks of adopting section 422 as a whole, the facts in that case dealt only with the liability of a possessor of property who retains possession while the work is being done. It is therefore arguable that only section 422(a) has been adopted in Arizona to date. Today we must decide whether to adopt section 422(b).

■ Absent Arizona law to the contrary, this court will usually apply the law of the Restatement. *Jesik v. Maricopa County Community College Dist.,* 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980); *MacNeil v. Perkins,* 84 Ariz. 74, 81, 324 P.2d 211, 215 (1958). No Arizona decision expressly declines to adopt section 422(b) under the circumstances we consider today. Because of the split of opinion among courts in other jurisdictions, we examine section 422(b) in terms of policy and application to see whether it is consistent with Arizona law and policy.

Some jurisdictions have declined to adopt section 422(b) because it imposes liability in the absence of personal fault. *See, e.g., Mai Kai, Inc. v. Colucci,* 205 So.2d 291, 292–93 (Fla.1967) (an owner is not liable for a contractor's defective work "not discover-

---

**5.** The Restatement reads:

§ 422. Work on Buildings and Other Structures on Land

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

a) while the possessor has retained possession of the land during the progress of the work, or

b) after he has resumed possession of the land upon its completion.

**6.** Prior to *Koepke,* Arizona courts considered section 422 only in the context of finding it was not applicable to suits by employees of independent contractors. As the *Koepke* court noted, the policy underlying this refusal to apply Restatement § 422 to such employees is unrelated to the question of liability for injuries to other invitees. 140 Ariz. at 423 n. 3, 682 P.2d at 428 n. 3.

able by inspection" because there is no liability absent personal fault). These jurisdictions appear to follow a strict application of the independent contractor rule and its proscription against vicarious liability.

In the case before us, the court of appeals reached a resolution that neither adopted nor rejected section 422(b), but rather adopted a modified version in accordance with an approach suggested by a footnote in *Macomber v. Cox*, 249 Or. 61, 435 P.2d 462, 466–67 n. 8 (1967).[7] As articulated by the court of appeals, subsection (b) would be construed to impose liability on a possessor of land only if the independent contractor negligently performs the duties the *possessor* is required to perform. Hence, the possessor of land may not be held liable for the independent contractor's negligence so long as the independent contractor performed the inspections and other duties of the *possessor* without negligence. *See Ft. Lowell*, 162 Ariz. at 497, 784 P.2d at 703.

We disagree with the court's analysis and believe it is based on an incorrect interpretation of section 422(b). It confuses two distinct types of liability under the exceptions to the independent contractor rule and conflicts with our cases regarding the duties of a possessor of land toward his invitees. We find the approach of the courts that have adopted section 422(b) more persuasive, and we find the policies behind section 422(a), as articulated by the court in *Koepke*, are equally compelling in application to a section 422(b) case.

1. *Restatement § 422(b) and the Standard For Liability of a Possessor of Land*

■ Section 422(b) restates the nondelegable duty exception of the earlier law, and makes it

impossible for a possessor of land to escape liability for the non-performance of his duty to maintain his land in safe condition, so long as he is in possession of it, by delegating the task of doing the work necessary to the performance of that duty to an independent contractor.

Restatement § 422 comment e (1965). The comment incorporates the traditional rule that the nondelegable duty exception applies whenever the landowner is in possession of the property, whether during the construction or after its completion, because it is the fact of possession that triggers the landowner's duty to his invitees. *See, e.g., Connolly v. Des Moines Inv. Co.*, 130 Iowa 633, 105 N.W. 400 (1905); *Wilkinson v. Detroit Steel & Spring Works*, 73 Mich. 405, 41 N.W. 490 (1889) (holding the landowner liable for negligence of independent contractor where injury resulted after construction was concluded and landowner had resumed possession). Contrary to the court of appeals' view, we find nothing within section 422 that varies the standard of liability when the landowner resumes possession after the construction is completed or limits the possessor's liability to situations in which the independent contractor is negligent in performing the duties of the possessor. The court of appeals cites comment g to section 422 for that proposition, but that comment merely states that where bad workmanship at an early stage is concealed by later work, the possessor may be under a duty to inspect as the work progresses and not merely when it is finished. The possessor cannot delegate this duty to escape liability for its inadequate performance. Under the court of appeals' construction of section 422(b), that is exactly what results.

---

**7.** We note that the Oregon Supreme Court later stated it had "never decided the basis for a storekeeper's liability or that of any other possessor of land for injuries to a customer caused by a condition negligently created by an independent contractor employed by the storekeeper." *Lipman Wolfe & Co. v. Teeples & Thatcher, Inc.*, 268 Or. 578, 522 P.2d 467, 468 (1974). In fact, the *Lipman* court chose to adopt section 422(a), finding that "the most logical and desirable basis for liability" in the context of an injury occurring while the storekeeper retained possession during construction was the "vicarious basis; that is, to apply the doctrine of respondeat superior and hold the storekeeper liable for the negligence of the contractor." *Id.* 522 P.2d at 470. In so deciding, the court relied on the duty of the storekeeper to maintain the premises in a safe condition and on the older line of cases holding that a possessor of land could not escape liability by delegating its duty to an independent contractor.

To the contrary, comment d to section 422 specifically makes the possessor liable, no matter what the nature of the contractor's negligence:

The rule [of vicarious liability] ... is applicable irrespective of whether the contractor's negligence consists of failure to exercise care to prepare adequate plans, or to make adequate inspections of the work as it progresses or after it is finished or to ascertain the need of repair, or of the *carelessness or incompetency of himself or his employees which results in bad workmanship.*

(Emphasis added).

 Thus, we conclude that section 422 holds a possessor of land liable to his invitees for injuries that occur while he is in possession and result from his independent contractor's negligence in performing the duties of the possessor or of the contractor.

 The nondelegable duty exception of the Restatement does not impose absolute liability. Although no fault of the possessor need be shown, the negligence of the independent contractor must be proven before liability may attach to the employer. However, because his duty to make the premises safe for his invitee may not be delegated to another, the possessor of land can be liable even though he personally has taken every precaution and does not know of the dangerous condition. Restatement § 422 comment e. The possessor of land is liable only when "similar conduct on the part of the employer, had he retained the work in his own hands, would have subjected him to liability." Restatement § 422 comment f. Thus, the Restatement's standard of liability for the landowner is based on whether the independent contractor's performance would have been negligent had it been undertaken by the *landowner,* and not whether the performance due from the landowner was negligently undertaken by the independent contractor.

2. *Case Law on the Duty of a Possessor of Land Toward His Invitee*

 In the present case, if the possessor had performed the electrical work himself and done so negligently, he would be liable to his invitee. Because the duty to put and maintain the land in a safe condition is not delegable, under the Restatement rule the possessor is liable for the negligent work of the independent contractor to whom he entrusted repair of his premises. This result is consistent with the larger body of law regarding the duties of a possessor of land toward his invitees. The landowner's duty to his invitee is one of due care under all circumstances to make the premises safe. This duty would be seriously undermined if the possessor of land could escape liability merely by delegating it to an independent contractor.

A long line of cases supports the principle that a possessor of land is accountable for the negligent failure of an independent contractor to put or maintain buildings or structures thereon in reasonably safe condition. *See, e.g., Little Rock Land Co. v. Raper,* 245 Ark. 641, 433 S.W.2d 836, 842 (1968); *Knell v. Morris,* 39 Cal.2d 450, 247 P.2d 352, 355 (1952); *Brown v. George Pepperdine Found.,* 23 Cal.2d 256, 143 P.2d 929, 930 (1943); *O'Gan v. King City Joint Union High School,* 3 Cal.App.3d 641, 83 Cal.Rptr. 795, 797 (1970); *Connolly,* 105 N.W. at 401; *Wilkinson,* 41 N.W. at 494; *Mayer v. Fairlawn Jewish Center,* 38 N.J. 549, 186 A.2d 274, 277 (1962); *Great American Indem. Co. v. Deatherage,* 175 Okl. 28, 52 P.2d 827, 830–31 (1936). We see no reason to depart from this settled principle.

We join the courts of other jurisdictions that have decided in similar cases to apply the rule in section 422(b) and hold a possessor of land liable for the negligence of his independent contractor. *See, e.g., Patton v. Spa Lady, Inc.,* 772 P.2d 1082 (Alaska 1989) (employer of independent contractor held liable for injuries resulting from electrical shock from a negligently installed outlet); *Pappas v. Carson,* 50 Cal.App.3d 261, 123 Cal.Rptr. 343 (1975) (possessor held liable for damages resulting from a fire caused by the independent contractor's negligence in electrical rewiring); *West End Corp. v. Royals,* 450 So.2d 420 (Miss. 1984) (developer held liable for damage caused by flooding from negligently con-

structed drainage ditch); *Thomassen v. J. & K. Diner, Inc.*, 152 A.D.2d 421, 549 N.Y.S.2d 416 (App.Div.1989), *appeal dismissed*, 76 N.Y.2d 771, 559 N.Y.S.2d 979, 559 N.E.2d 673 (1990) (vicarious liability for negligence of independent contractor in constructing a staircase may be imposed on landowner when invitee injured by fall on defective staircase).

We further believe that many of the policies set forth in *Koepke* apply with equal force in the circumstances of a section 422(b) case. While it is true that the rule of vicarious liability often seems harsh, it is also true that the possessor bargains for repairs from the independent contractor, receives the primary benefit of the repairs, and assumes the duty to make the premises safe by holding them open to invitees.

It is often said that a landowner may not be held as the "insurer" of his invitee's safety. We agree with the court in *Koepke* that this principle goes to the fact that absent negligence in the performance of a duty, whether performed by the landowner or delegated to another, a landowner may not be held liable. Our decision today does no violence to this principle. In addition, from a risk allocation perspective, it seems just to place responsibility with the landowner, who is in the best position to select a competent and solvent contractor, can insure against the risk, and can further insist that the contractor indemnify him for any losses occasioned by the latter's negligence. Further, the landowner can retain sufficient control over his contractor's employment and performance to monitor safety procedures and minimize the risk of negligent performance. Finally, we believe that subsections (a) and (b), when applied together, support the policy goals of public safety and employer responsibility that our tort law seeks to further.

For the above reasons, we adopt Restatement § 422(b) without qualification with respect to the liability of a possessor of land for the negligence of his independent contractor when such negligence results in injury to an invitee.

### C. The Exception for Inherently Dangerous Activities

The second exception to the independent contractor rule considered by the court of appeals applies where the work to be performed is inherently dangerous. In such cases the employer is liable for injuries resulting from negligent performance of the work by an independent contractor. For this exception to apply, the work must involve a risk of harm that cannot be eliminated by exercising reasonable care. Restatement §§ 416, 427; *Bible v. First Nat'l Bank*, 21 Ariz.App. 54, 57, 515 P.2d 351, 354 (1973).

Because Ft. Lowell is liable under the principles of Restatement § 422(b), its possible vicarious liability based on inherently dangerous work becomes a moot question. We note, however, that neither party in this case presented any evidence to the trial court that the specific electrical work undertaken in this case either is or is not inherently dangerous. We do not deal with labels, but only facts. Electrical work may or may not be inherently dangerous, depending on the type of work involved or the circumstances. *See Bible*, 21 Ariz.App. at 57, 515 P.2d at 354; Annotation, *Liability Of Employer With Regard To Inherently Dangerous Work For Injuries To Employees Of Independent Contractor*, 34 A.L.R. 4th 914, 926 (1984).

### CONCLUSION

Relief is granted. We vacate the court of appeals' opinion. The trial court is to proceed in a manner consistent with this opinion.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.